## FRANCIS HENRETTY *versus* CITY OF DETROIT
September 28, 1839.

C. Tryon, W. Woodbridge & Backus, attornies for plaintiff in certiorari.

J. A. Van Dyke & A. D. Fraser, attornies for defendant in certiorari.

[INDORSEMENT]

*First Circuit*

Francis Henrietty
vs
*City of Detroit*
Opinion of
C W Whipple,

DISSENTING:

[DISSENTING OPINION]

| Francis Henretty vs The People | Supreme Court: First Circuit. |

Cer[i] to Mayors Court of the City of Detroit.

The plaintiff in error was prosecuted in the Mayor's Court of the City of Detroit for an alleged violation of an ordinance of said City entitled "A law to regulate public markets." The complaint was founded upon the 1st & 2nd Sections of the ordinance, which provides in substance that *"all public markets in said city shall be held at the market houses therein"* and secondly; that *"no person shall sell meat except in the stalls rented from the corporation."* The 7th Section prescribes as a punishment for a violation of any of the provisions of the ordinance, *"a fine not exceeding $50, and imprisonment not exceeding ten days, or either."* Upon

38

a plea of not guilty being interposed a jury was empannelled, who after hearing the evidence returned a *general* verdict, of guilty: whereupon a judgment was entered in the words following: "*Said Mayor's Court then & there fined the said Francis Henretty, for said offence, of which he was found guilty by the jury, as aforesaid in the sum of fifty dollars and the costs of prosecution and ordered that he should stand committed until the fine and costs should be paid.*" The defendant feeling himself aggrieved by the judgment & proceedings in the Mayor's Court, made the necessary affidavit, upon which a certiorari was allowed and subsequently issued to remove the cause to this court.

The points made by the Counsel for the plff. in error and upon which they rely for a reversal of the judgment below are of the gravest character, involving questions which have never before been adjudicated upon by the judicial tribunals of this State or of the late Territory of Michigan; and which, if sustained by this court would affect most vitally the interests not only of the City of Detroit in its corporate capacity, but a very large class of private individuals. The importance, therefore, of the question at issue taken in connection with the magnitude of public & private interests at stake, have induced me to give to the cause, a careful and deliberate examination, the results of which I shall now proceed to state; and I may here remark that the opinion now to be expressed will contain little else than the conclusions of my mind upon the various points argued at the bar, without entering very much at large into the course of reasoning by which I have been conducted to these conclusions: contenting myself for the present, with a statement of such reasons in support of my conclusions as appear to me most obvious and striking, without referring to others which may have influenced but not controlled my judgment.

I shall consider the various points argued by the Counsel for the plff. nearly in the order in which they are stated in the very elaborate brief with which I have been furnished.

I: It is contended that the Legislative Council of the late Territory of Michigan had no authority to pass the law entitled "*An Act relative to the City of Detroit.*" This proposition tho' the same in substance, is different in terms from that stated in the very ingenious written argument of one of the Counsel, where the word charter is frequently adopted and as I think misapplied: In the argument of this question a much wider scope was indulged in, than was necessary for its determination; which depends upon the true construction to be given to the powers granted to the Legislative Council by the Act of Congress of March 3rd, 1823: What then were the powers conferred upon that body? In the Second Sec of the Act it is provided "that the same powers which were granted to the governor, Legislative Council, the House of representatives, of the North Western territory, by the ordinance of Congress, passed on the 13th day of July 1787, &c are hereby conferred upon, and shall be exercised by the governor and Legislative Council." What, then, were these powers? By reference to the ordinance it appears that "*the Governor, Legislative Council, and House of Representatives*" had "*authority to make laws, in all cases, for the good government of the district, not repugnant to the principles and articles in this ordinance established and declared.*" The question now recurs had that body, by virtue of the broad powers conferred upon them "*to make laws, in all cases, for the good government of the district,*" authority to pass the Act cited in the proposition I am now considering: To solve this question it will be necessary to define what is to be understood by a municipal or public corporation: Without discussing the propriety of the metaphysical and quaint defi-

nitions given by some of the ancient legal authors, I propose to adopt one which for simplicity and comprehensiveness, appears to me to be the best I have met with: I refer to the one given by Willcock who defines a public corporation to be "the investing of the inhabitants of a particular place with its local government." From this definition the nature & objects of such a corporation may be ascertained: Its nature & general characteristics are familiar to every lawyer; its objects the government of a portion of the state, & to this end it is endowed with a portion of political power: Is it not then manifest that the general authority to make laws for the government of the District includes the authority to incorporate subordinate communities for the government of a portion of that District? : I think it does: In expressing the opinion that the Legislative Council were invested with authority to pass the law in question, I desire it to be understood that it is not my purpose to affirm or disaffirm the views expressed by Counsel respecting the powers conferred upon the Gov$^r$ & judges while performing the functions of a Legislative body: that question is not involved in this case, and does not, therefore call for a decision.

Secondly: admitting the authority of the Legislature to incorporate the City of Detroit, it is contended that all rights acquired by the City, ceased on the formation of the State Government unless expressly preserved:

The erection by Congress, of the Territorial Government, was certainly for temporary purposes: the ordinance of 1787, which was the fundamental law of the whole Northwestern Territory, contemplated a state of things when the people of the several Territories, which were to be carved out of that immense extent of Country, should throw off the Colonial condition, and assume the more imposing attitude of a state of the Confederacy, clothed with all the attributes of sovereignty & independence which belonged to the original

states: The people of the Territory of Michigan availing themselves of the rights secured by the ordinance, did, in the month of June, 1835, meet together, by their representatives, in Convention, and formed a Constitution & state government, which was to take effect upon its ratification by the people: that the Legislative Council could not establish or ordain *political or public corporations,* which should outlive the temporary government, is very true, and that the Convention which formed the state Constitution representing the people in their sovereign capacity had ample authority to annul all charters of the nature referred to is equally true: The question then arises was the act incorporating the City of Detroit preserved by the Constitution of the State: This question turns upon the construction to be given to the 2$^d$ Sec of the schedule which ordains that "all laws now in force in the Territory of Michigan, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitations, or be altered or repealed by the Legislature." Was then, the law incorporating the City of Detroit in *"force"* at the time of the adoption of the Constitution? It certainly was: Were any of the provisions of that law *"repugnant"* to the Constitution? It is contended by the counsel for the plff in error, that the act of incorporation was repugnant to the Constitution in this that the members of the Council Council are clothed with Legislative & Judicial powers, whereas the Constitution declares that *"The powers of the government shall be divided into three distinct departments: the legislative, the executive, and the judicial; and one department shall never exercise the powers of another, except in such cases as are expressly provided for in this Constitution."* This provision, it is believed, is incorporated not only in the Constitution of the United States, but in the Constitutions of the several States of the Union: indeed it has become a settled maxim in the science of government, that it is

essential to liberty, and to the harmonious action of the whole to keep separate the three great departments by which the government is administered & that each should move within the sphere prescribed by the fundamental law and never assume to exercise power granted exclusively to the others. Does then, the authority conferred upon the Common Council of the City of Detroit in their legislative capacity to enact laws, and then to sit as judges when their validity is drawn in question, and also try those charged with their infraction, involve a violation of the article of the Constitution just quoted? I think it does not: The "government" mentioned in the Article, means the STATE GOVERNMENT; the three "departments" referred to, means the three *great departments* of this *state government:* The Constitution prescribes and limits the powers of each of these three great departments, and in the article above quoted, it was the intention of the framers of the Constitution to guard against the Exercise by one of these three departments, of the powers conferred upon either of the other departments: To illustrate this position: Sec 1, art VI of the Constitution provides that *"The Judicial power shall be vested in one Supreme Court, and in such other Courts as the Legislature may from time to time establish."* Pursuant to the powers conferred upon the Legislature by this Article, they proceeded to establish a Supreme Court, a Court of Chancery, and a Circuit Court: These Courts are the administrators of the Judicial authority of the State, or of one of the three great departments of which I have been speaking: Now: if one or the other of these courts should attempt the exercise of legislative power, their act [would] be void, because it would violate the fundamental principle to which I have adverted: If I have succeeded in giving to the Constitution a just construction it will follow, that the exercise of a limited legislative and judicial authority by a

body constituted like the Common Council of the City of Detroit, is not repugnant to the Constitution: Like powers have been conferred by almost every Legislature in the Union, and the highest evidence of the validity of such a grant of power, is to be found in the fact that it never has been seriously questioned; and that if invalid, it should to this day have escaped the observation of the most eminent judges and lawyers who have adorned the Bench and the Bar in this Country. But while I admit the validity of the law conferring legislative and judicial powers on the persons composing the Common Council of the City of Detroit, I cannot permit the occasion to pass, without the expression of an opinion that such a combination of power in the same persons, violates in spirit, the very principle recognized in our Constitution, which I have endeavored to illustrate: If it is impolitic & dangerous and contrary to all our notions of government, to invest the Supreme Judicial Tribunal of the State with legislative powers, why should it be thought politic, safe, and consistent with correct principles to permit such powers to be exercised by an inferior jurisdiction? It is impossible that a body of men clothed with such authority, can gain that confidence & conciliate that respect so necessary to impart to their adjudications that moral influence without which judicial decisions are of little value: To grant legislative powers to a body of men, and at the same time invest them with the authority of judges to decide on their validity and to enforce obedience to them is putting into their hands an instrument of power which may be wielded for the worst purposes: In voting for the passage of law, it is fair to presume that the law maker is satisfied with respect to its validity, for his mind up to this period is open to conviction,—he weighs with impartiality all the arguments in favor & against it: Let the same lawmaker sit in the capacity of a judge, and

let arguments drawn from the Constitution be directed against the very law *of his own creation,*—his pride of opinion is at once awakened,—he construes the argument into an attack upon the correctness of his judgment,—upon his wisdom as a legislator,—these combined produce a state of mind unsuited to the character of a judge:—who should be free from all influences but such as may tend to clear the way for a full, fair, impartial, and enlightened administration of law & justice: The views I have thus expressed, it must be understood, are directed against the structure of the Tribunal called the Mayor's Court, and not against the individuals who have heretofore, or who now, constitute that tribunal: the best evidence of their respectability and character is to be found in the fact that their fellow citizens have called them to the discharge of duties, so honorable & responsible.

Having, thus far, endeavored to prove that the Legislative Council had the authority to pass the law incorporating the city of Detroit, and that it has not been expressly or impliedly repealed, I shall now proceed to consider whether the enactment of the by law in question was a competent exercise of power on the part of the Common Council. It was urged with becoming zeal, and much ability that the by law is void because: 1st There is no authority for prescribing that "all public markets in said city shall be held at the market houses therein" and $2^{ly}$, "That no person shall sell meat except in the stalls rented from the corporation"

To determine these questions we must look at the act incorporating the City of Detroit, which is its constitution. By that act the Common Council are empowered to "establish keep & regulate one or more public markets" and "to make by laws relative to the public markets." Under this grant of power had the Com Council authority to ordain that all pub-

lic markets should be held at the market houses in the City of Detroit; Corporations have such powers and no others than those given them by the laws which give them a legal existence: they can take nothing by implication. Applying this rigid & inflexible rule to the present case I yet think the power claimed for the Com Council can be sustained: The public health, & the public convenience, two objects of primary importance, especially in a populous town or city imperiously demand some regulation as to the time & place when & where public markets should be held: These facts which are unquestionable, should be looked to in giving a construction to a power granted in terms so general as those employed in the act of incorporation. But it is insisted upon with much force that the grant of power set forth does not authorize the corporation to restrain all persons from selling meat *"except in the stalls rented from the corporation."*

It was argued that such a regulation is *in restraint of trade,* and that, as a consequence the authority to pass such a by law cannot be fairly inferred. After giving to this question the most patient investigation I have come to the conclusion, founded on principle and authority that the second section of the by law which imposes the restraint I have just suggested is *void:* It is void because it is both unreasonable, and in restraint of trade: To test the correctness of this opinion let us look to the practical effects of such a restriction if rigidly enforced. And firstly: It precludes all persons from selling meat except such as the Common Council may choose to rent a stall, and to such only as have the ability to pay the rent that may be exacted: Secondly: the effect of such a restriction is to create a monopoly, and if the act was rigidly enforced such a monopoly as would preclude many at some seasons of the year from obtaining animal food: Thirdly: it is, in effect prohibiting the inhabitants of the City from purchas-

ing meats, except from the few who may have been so fortunate as to obtain a stall, & fourthly, it puts the whole community in the power of the few who have rented stalls so far as regards the supply of meats and the price to be paid: For these reasons I think the by law so far [set] forth unreasonable, unnecessary and I must say oppressive: It will follow from what I have already stated that according to my conception, the Second Sec of the by-law, is also in restraint of trade. It was argued by the able counsel for the defts, that the restraint imposed was not general but particular: that it merely *fixed the place* where meats were to be sold; this is very true, but is it not apparent that such regulations both with regard to time & place may be so restrictive in their character as to be obnoxious to the general principle that all laws in restraint of trade are void: To illustrate my meaning: let us suppose that the Common Council should pass a law prohibiting the sale of meats except in *one* of the stalls of the public market, and that such sale should be made but *once* a week: now this regulation would regard *time & place*, yet it would hardly be contended that it could be sustained, because of its unreasonableness, and because the *effect* would be to restrain trade: But let us suppose a case which frequently occurs, & to which I took the liberty of directing the attention of the Senior Counsel for the defendants during the progress of his argument: Farmers residing out of the limits of the city and in adjoining counties are daily seen in our streets during the winter season with wagons laden with fresh beef, pork, mutton, veal & venison: Now according to the 2$^d$ Sec of the by-law in question, they could not sell their meats unless in the stalls rented from the Common Council:—without subjecting themselves to fine and perhaps imprisonment: But it may be said, that no notice would be taken of such a violation of law, or that the law was not

intended to apply to such cases: The learned Counsel is the Recorder of the City of Detroit, and usually presides at the Mayor's Court and I should do injustice to his ability as a judge, if with the plain provision staring him in the face declaring that "no person shall sell meat except in the stalls rented from the Corporation," he should charge the jury impannelled to try the case that the law was not intended to apply to such cases: Would he not rather say, that the law was so plain as to admit of but one construction: that where the meaning of a law was obvious & apparent, it was not the province of a judge or jury to *intend,* that the law makers did not mean what they have clearly expressed: This would undoubtedly be the language of the Recorder, unless like myself he should think the law unreasonable & in restraint of trade:

The suggestion that the provision of the by law I am considering would never be enforced, cannot influence the decision of the case: I am bound to suppose that it is enforced: But without resorting any further to those principles by which the validity of by laws of corporations are tested, I shall conclude this branch of the case by referring to one reported in the 10 of Wendell p 99: I shall notice it with some particularity as it not only sustains the views I have expressed upon the point under consideration, but fully confirms some of the positions I have laid down in the progress of this opinion: One Webster was sued for a violation of one of the by laws of the Village of Buffalo, which made it unlawful for any person during certain months to hawk about or sell by retail any kind of fresh beef, pork, lamb or mutton for the consumption of the inhabitants of the Village, except at the public markets, or within certain limits around the same: The defendant agreed with a grocer to let him have a quarter of lamb and to receive in payment goods out of his

grocery, and the sale & payment accordingly took place: On this evidence the Justice who tried the case imposed a penalty of five dollars; The judgment was removed to the Court of Common Pleas where the judgment of the Justice was reversed. Whereupon the Trustees of the Village sued out a writ of error from the Sup Court: Chief Justice Savage delivered the opinion of the Court as follows: "By the act incorporating the Village of Buffalo the trustees are authorized to make such prudential by-laws, as they may deem proper, relative to the public markets &ᶜ and the only question is whether the by-law is valid: At the Common Law corporations have power to make by-laws for the general good of the corporation. they must be reasonable & for the Common benefit: They must not be in restraint of trade, nor impose a burden without an apparent benefit. A by-law for the restriction of trade and imposing particular restraints as to time & place is good, but general restraints are bad: For example, a by-law that no meat should be sold in the Village would be bad, being a general restraint; but that meat should not be sold except in a particular [place] is good, not being a restraint of the right to sell meat, but a regulation of that right: Laws relating to public markets must necessarily embrace the power to require all meats to be sold there, *not that every man who sells meat shall rent a stall; nor is there any such objection to the present law; any one may sell meat in the street adjacent to the markets.*" This opinion which I have quoted literally establishes the following proposition: 1ˢᵗ: That the power to regulate public markets embraces the power to require all meats to be sold there: so far this decision affirms the right I have claimed on behalf of the Com Coun. to require all public markets in the City of Detroit to be held at the market houses: 2ˡʸ: By-laws must be reasonable & for the common benefit: 3ˡʸ: that general restraints are

bad,—particular ones good: $4^{ly}$: that a by-law requiring every man who sells meat to hire a stall would be bad:

Now the $2^d$ Sec of the by law of the City of Detroit prohibits any man to sell meats except in the stalls rented from the corporation: If so, it follows that in order to enable a man to sell meat he must first hire a stall from the corporation: Such a by law, altho' a mere regulation of trade, a particular restraint is according [to] Chief Justice Savage bad, & for the plain reason, that it is manifestly *unreasonable and not for the common benefit:* It being *essential* to the validity of a by law that it should be reasonable, and for the common benefit—not for the benefit of the few.

The counsel for the defts cannot fail to perceive the analogy between the case I have just reviewed, and that which I propounded to him during the argument of the present case: the right of the trustees of Buffaloe to pass the law was affirmed on the principle that it was reasonable to require the farmer who brot' his quarter of lamb to the Village to repair to the public market and there dispose of it, but disaffirmed the right to require those who thus sold meat to hire a stall.